UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LUIS A. JIMENEZ,

    Plaintiff,

        v.

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS,

    Defendant.[1]

Civil Action No. 09-2254 (JDB)

**MEMORANDUM OPINION**

This matter is before the Court on defendant's motion for summary judgment.[2] Having considered the motion, plaintiff's opposition thereto and the entire record of the case, defendant's motion will be granted.

I. BACKGROUND

Plaintiff was arrested on June 18, 1992, and a grand jury indictment setting forth two charges against him was filed on June 30, 1992 "in the [United States District Court for the

---

[1] The Court construes plaintiff's complaint as a civil action under the FOIA and the Privacy Act against the United States Department of Justice. For convenience, however, the Court will refer to the defendant in this action as the Justice Department component to which plaintiff addressed his requests.

[2] Also before the Court are three motions filed by plaintiff: the Motion to Clarify Plaintiff's Expungement Claim Presented In His Lawsuit [Dkt. #14], the Motion for Leave to Supplement Plaintiff's Affidavit Attached in his Motion in Opposition to the Defendant's Motion for Summary Judgment [Dkt. #27], and the Motion for Reconsideration of This Court's Order Dated June 22, 2010, Denying Plaintiff's Emergency Motion Docket No. 22 [Dkt. #28]. The first two will be granted. The Court already has ruled that discovery in this matter is not warranted, and particularly in light of the ruling on defendant's motion for summary judgment, plaintiff's motion for reconsideration will be denied.

-1-

Southern District of New York], docket entry No. 62." Compl. at 5. A superseding indictment was filed "[o]n September 1, 1992, docket entry No. 80." *Id.* Subsequently, "[o]n April 15, 1993, [plaintiff] and twenty-two others were charged in a thirteen count superseding indictment charging various narcotics and firearms offenses." *Jimenez v. United States*, No. 96-cv-8679, 1998 WL 184339, at *1 (S.D.N.Y. Apr. 2, 1998).[3] This superseding indictment "was recorded upon the [court's] docket, docket entry No. 128," Compl. at 5, and set forth three charges against plaintiff in Counts One (conspiring to distribute and possession with intent to distribute crack cocaine), Two (engaging in a continuing criminal enterprise) and Eleven (using and carrying a firearm during and in relation to drug trafficking crimes). *Jimenez*, 1998 WL 184339, at *1. According to the plaintiff, this "**EXISTENT** and **PUBLIC** superseding indictment," *see* Compl., App. A (excerpt from docket sheet),[4] "was **STOLEN**" by the prosecutors and in its place a forged third superseding indictment was filed with the Clerk of Court, also as docket entry 128. *Id.* at 7 (emphasis in original); *see id*. at 1, 9 (alleging that "the existence and public superseding indictment . . . **is being hidden** in the U.S. Attorney [sic] Office for the S.D.N.Y.'s **secrect [sic] files**") (emphasis in original); *see also id.*, App. B ( alleged forged indictment).[5] Ultimately,

---

[3] Apparently the sole purpose for the superseding indictment was to identify three of the defendants by their full names. Compl., Ex. 5 (excerpt from transcript of proceedings on April 16, 1993).

[4] Plaintiff describes Appendix A as "Page[] Nos. 61-62 Of The Mastel [sic] Docket Sheet Which Show The Existence of An Existent And Public Superseding Indictment, Which Was Returned By The Grand Jury In Open Court, And Its Finding Was Recorded Upon The USDC/SDNY's Computer Docket On April 15, 1993, Docket Entry No. 128." Compl., App. A.

[5] Plaintiff describes Appendix B as "THE FORGED AGENCY RECORD THIRD SUPERSEDING INDICTMENT S-3 WHICH WAS NOT RETURNED BY THE GRAND JURY IN OPEN COURT AND ITS FINDING WAS NOT RECORDED UPON THE COURT'S
(continued...)

"[o]n October 25, 1993, plaintiff was convicted upon three counts . . . which were illegally charged in the forged third superseding indictment," and he now is serving a term of life imprisonment. *Id.* at 6.[6]

### A. FOIA Request No. 08-3341

On September 9, 2008, plaintiff submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Executive Office for United States Attorneys ("EOUSA"), a component of the United States Department of Justice ("DOJ"), for the following information:

> The grand jury superseding indictment which was recorded upon the U.S. District Court for the S.D.N.Y.'s computer docket on April 15, 1993, docket entry No. 128 . . . in the possession of the U.S. Attorney [sic] Office for the S.D.N.Y., thus the legal indictment . . . prepared substantially to be relied upon in agency decisionmaking.

Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s "Mot. to Clarify Pl.'s Expungement Claim Presented in his Lawsuit" ("Def.'s Mem."), Boseker Decl., Ex. A (FOIA Request) at 2. The EOUSA received the request on October 1, 2008, Boseker Decl. ¶ 6, and the matter was assigned a tracking number, FOIA Request No. 08-3341, Def.'s Mem., Boseker Decl., Ex. B (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated October 8, 2008) at 1.

---

[5](...continued)
COMPUTER DOCKET ON APRIL 15, 1993, DOCKET No. 128." Compl., App. B (emphasis in original).

[6] More specifically, "[o]n October 25, 1993, [plaintiff], proceeding *pro se*, but with . . . 'stand-by' counsel, pled guilty to Counts One, Two and Eleven," and "[o]n April 19, 1994, pursuant to the Plea Agreement, th[e] Court sentenced [plaintiff] to life imprisonment on Counts One and Two, to run concurrently, and to five years' imprisonment on Count Eleven, to run consecutively to the sentence imposed for Counts One and Two." *Jimenez*, 1998 WL 184339, at *1.

A search of records maintained by the United States Attorney's Office for the Southern District of New York ("USAO/SDNY") yielded 17 boxes of records from which staff "retrieved and copied all the indictments and superseding indictments . . . found in the case file." Def.'s Mem., Smith Decl. ¶ 7. The "EOUSA released 26 pages of these indictments in their entirety." *Id.*, Boseker Decl. ¶ 10; *see id.*, Ex. D (Letter to plaintiff from W.G. Stewart II dated November 18, 2008); Compl., Addendum A (same).

Dissatisfied with this response, plaintiff brought an administrative appeal before the DOJ's Office of Information Policy ("OIP"). Compl. ¶ 3. According to plaintiff, the EOUSA released documents that he had not requested. Def.'s Mem., Boseker Decl., Ex. E (FOIA Appeal dated November 25, 2008) at 3. Rather than the "original indictment which was filed . . . on June 30, 1992, docket entry No. 62," and the "'alleged' 'superseding indictment'" which was filed . . . on September 1, 1992, docket entry No. 80," plaintiff "**SPECIFICALLY** . . . requested a copy of the legal and public superseding indictment which was **recorded** upon the U.S. District Court for the S.D.N.Y.'s computer docket on April 15, 1993, docket entry No. 128." *Id.* (emphasis in original). He reiterated his demand for the release of the document he requested. *Id.* at 4. The OIP determined that the "EOUSA's response was correct and that it conducted an adequate, reasonable search for records responsive to [his] request." *Id.*, Ex. G (Letter to plaintiff from Janice Galli McLeod, Associate Director, OIP, dated September 22, 2009, regarding Appeal No. 99-0556); Compl., Addendum B (same).

### B. FOIA Request No. 08-4421

On December 9, 2008, plaintiff sent to the EOUSA a "request[] . . . to remove from . . . the U.S. Attorney [sic] Office for the S.D.N.Y. and the U.S. District Court for the S.D.N.Y.'s

files, a forged agency record third superseding indictment S-3." Def.'s Mem., Boseker Decl., Ex. H (Request for Expungement of a Forged Agency Record Third Superseding Indictment S-3 dated December 9, 2008). The EOUSA interpreted this request as one under the FOIA for release of agency records and under the Privacy Act, 5 U.S.C. § 552a, for amendment of agency records. *Id.*, Boseker Decl. ¶¶ 16-17. The EOUSA assigned the matter a tracking number, FOIA Request No. 08-4421. *Id.* ¶ 18.

The EOUSA closed plaintiff's request on two grounds. Def.'s Mem., Boseker Decl. ¶ 18. First, it found that the FOIA "only applies to records already in existence and does not require an agency to conduct [re]search, create new records, or answer questions presented as FOIA requests." *Id.*, Boseker Decl. ¶ 18; Compl., Addendum C (Letter to plaintiff from W.G. Stewart II dated January 8, 2009) at 1. Second, citing 28 C.F.R. § 16.81(a)(4), the EOUSA denied plaintiff's request for amendment of records because "criminal case files maintained by United States Attorneys' Offices are exempt from amendment-of-records provisions of the Privacy Act." Def.'s Mem., Boseker Decl. ¶ 18.

Plaintiff appealed this response to the OIP, and the OIP affirmed the agency's determination with respect to the FOIA request. Compl., Addendum D (Letter to plaintiff from J.G. McLeod dated August 10, 2009). Because the Office of Privacy and Civil Liberties ("OCPL") handled administrative appeals for expungement of agency records, the OIP forwarded plaintiff's appeal to that office for adjudication. *See id.* OCPL closed the administrative appeal "[i]nasmuch as this matter is presently the subject of judicial review." Notice [Dkt. #15], App. A (Letter to plaintiff from Kirsten J. Moncada, Director, Office of Privacy and Civil Liberties, dated April 19, 2010); Mot. to Clarify Pl.'s Expungement Claim

Presented In His Lawsuit at 2-3.

In this action, plaintiff demands the release of the "forged" superseding indictment and its expungement from the EOUSA's records. Compl. at 3. In the alternative, he demands that the alleged forged superseding indictment be authenticated. *Id.* Lastly, plaintiff purports to raise claims under 28 U.S.C. § 534 and the Fifth Amendment, *see id.* at 2, 12-14, alleging that the EOUSA "must take appropriate measures to assure that records are reliably informative," such that it is obligated to "expunge or destroy the forged superseding indictment . . . from its criminal files." *Id*. at 13-14.

## II. DISCUSSION

### *A. Summary Judgment Standard*

"A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim," FED. R. CIV. P. 56(b), and "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The summary judgment standard applies equally to a suit filed under the Privacy Act. *See Abuhouran v. Soc. Sec. Admin.*, 291 Fed. Appx. 469, 472 (3d Cir. 2008) (affirming district court's grant of summary judgment for the agency where the plaintiff "failed to proffer evidence – in the form of affidavits or otherwise – that SSA employees intentionally or willfully refused to correct her information and issue a new card" in violation of the Privacy Act); *Reinbold v. Evers*, 187 F.3d 348, 362 (4th Cir. 1999) (affirming district court's grant of summary judgment on Privacy Act claim where plaintiff "failed to bring forward any evidence" of the agency's violation of the Privacy Act). In a Privacy Act case, the Court may rely on agency affidavits or declarations. *See Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) ("In a suit seeking agency documents – whether under the Privacy Act or FOIA – at the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search

terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.") (brackets, internal quotation marks and citation omitted).

*B. The Searches for Records Responsive to Plaintiff's FOIA Requests*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542; *see Spannaus v. Cent. Intelligence Agency*, 841 F. Supp. 14, 16 (D.D.C. 1993) (citing *Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)) ("If the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate.").

EOUSA staff in Washington, D.C. referred plaintiff's request "to . . . the FOIA contact for the USAO/SDNY to search for the specifically requested records." Def.'s Mem., Boseker Decl. ¶ 8. The initial search involved "inserting [plaintiff's] name into the Legal Information Network System ("LIONS")[,] . . . the case management/tracking system used by [United States

Attorney's Offices] to record and maintain up-to-date information on cases and matters opened by Assistant U.S. Attorneys ('AUSAs')." *Id.*, Smith Decl. ¶ 5. The LIONS inquiry yielded "the USAO number, the court number," and information confirming that the subject of the case file and plaintiff are the same individual. *Id.* The EOUSA's declarant retrieved the case file from the USAO/SDNY records unit.[7] *Id.* In addition, the declarant "[p]rinted the docket sheet from Public Access to Court Electronic Records ("PACER")," which reflected that the requested "indictment was listed as item number 128 on the Court's docket sheet." *Id.* ¶ 6(b).

The declarant received 17 boxes of records from the records unit, and after searching all the boxes she "retrieved and copied all the indictments and superseding indictments . . . found in the case file." Def.'s Mem., Smith Decl. ¶ 7. She forwarded these documents to the EOUSA along with a copy of the docket sheet. *Id.* When she learned that plaintiff "filed a lawsuit because he did not receive the indictment he requested," *id.* ¶ 8, the declarant directed another USAO/SDNY staff member "to retrieve a copy of item 128 from the court's file for case 92 CR 00550," which, too, was forwarded to the EOUSA for release to plaintiff. *Id.* The EOUSA "released 26 pages of these indictments in their entirety." *Id.*, Boseker Decl. ¶ 10 & Ex. D. "The documents located by the [USAO/SDNY FOIA Contact], forwarded to EOUSA, and released to [plaintiff] thereafter, were identical to those attached to [plaintiff's] complaint." *Id.*, Boseker Decl. ¶ 15.

Plaintiff challenges the EOUSA's search because it failed to locate the document he specifically requested, which he describes as the "**EXISTENT** and **PUBLIC** superseding

---

[7] The declarant also sent a copy of plaintiff's request by e-mail to the AUSA who prosecuted the case. Def.'s Mem., Smith Decl. ¶ 6(c). The AUSA "advised that he did not know what [plaintiff] was talking about." *Id.*

indictment in form which was **RECORDED** upon the U.S. District Court for the Southern District of New York[]'s computer docket on April 15, 1993, docket entry No. 128." Mot. in Opp'n to the Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 2 (emphasis in original). He maintains that the AUSA who prosecuted his criminal case stole the indictment from the court's criminal files and illegally replaced it with a forged indictment, also entered on the court's docket, *id.* at 2-3, and, according to plaintiff, the two indictments do not match. *Id.* at 3. "[T]he forged indictment . . . **DOES EXIST**," he asserts. *Id.* (emphasis in original); *see id.* at 5. In addition, plaintiff contends that the EOUSA has an obligation to search the USAO/SDNY records and "**to verify** that this indictment [in its records] **does not match**" the indictment on the court docket. *Id.* at 5-6 (emphasis in original). Because the USAO/SDNY "**did not demonstrate** that the third superseding indictment . . . does not exist," *id.* at 7 (emphasis in original), plaintiff argues that its search was inadequate, *id.* at 6. Further, plaintiff contends that the "existent and public superseding indictment **is being hidden** in the [USAO/SDNY's] **secre[]t files**." Compl. at 9.

Plaintiff misconstrues the EOUSA's obligations under FOIA, which directs that an "agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, . . . make the records promptly available to" the requester. 5 U.S.C. §552(a)(3)(A). "The agency's possession of the requested documents is an indispensable prerequisite to liability in a FOIA suit." *Folstad v. Bd. of Governors of the Fed. Reserve Sys.*, 234 F. 3d 1268 (6th Cir. 2000) (table). The EOUSA is not obliged to produce records that it does not possess, *see Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998), and it is not required to obtain records from the district court, *see Dockery v. Gonzales*, 524 F. Supp. 2d 49, 53 (D.D.C.

2007) (finding that the EOUSA was not required to search the files of the District Court and Superior Court; rather, it "was obligated to search only its files and to produce only those records that were in its custody and control at the time of the FOIA request").[8] The EOUSA not only demonstrates that its search of LIONS and the criminal case file was reasonable, but also that it "took the extraordinary step of obtaining [the superseding indictment, docket no. 128,] from the District Court." Def.'s Mem., Boseker Decl. ¶ 14. The EOUSA cannot be faulted for producing the document plaintiff requested and identified by case name, case number, court and docket number.

Moreover, the EOUSA is not obligated to respond to questions, requests for research or, as in this case, a request to authenticate or verify the contents of a particular document. *See Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 573 (9th Cir. 1985) (affirming grant of summary judgment on requester's counterclaim which sought declaration of agency's obligation under FOIA to generate documents explaining its policies and actions); *Di Viaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) (plaintiff's questions – whether any pictures of him had been taken and if so, whether they had been disseminated – were not within FOIA's scope); *Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 10 (D.D.C. 2007) ("To the extent that plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests."). The EOUSA correctly declined to perform these tasks in response to plaintiff's FOIA requests.

Lastly, plaintiff's dissatisfaction with the results of the EOUSA's search does not render the search inadequate, as "[t]he failure to discover the information sought is not conclusive

---

[8] Federal courts are not subject to the FOIA. 5 U.S.C. §§ 551(1)(B), 552(f).

evidence that the agency has failed to make a reasonable effort." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (citations omitted); *Iturralde v. Comptroller of the Currency*, 315 F. 3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). And plaintiff's speculation as to the existence of additional records, absent support for his allegations of agency misconduct or bad faith, *see, e.g., Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993), does not render the searches inadequate.[9] *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Health & Human Servs.*, 27 F. Supp. 2d 240, 244 (D.D.C. 1998) (finding that "plaintiff's unsubstantiated suspicions . . . therefore, are insufficient to call into question the adequacy of [the agency's] search and the truthfulness of its affidavit").

### C.  The EOUSA Properly Construed Request No. 08-4421 In Part As A Privacy Act Request

Based on his assertion that the EOUSA possesses the alleged "forged third superseding indictment," plaintiff demands that it be expunged. Plaintiff claims that both 28 U.S.C. § 534 and the Fifth Amendment to the United States Constitution "**preclude** EOUSA from maintaining in its criminal files as a Grand Jury indictment, a forged third superseding indictment," such that

---

[9] The Court has reviewed plaintiff's multiple submissions and identifies nothing in the record supporting his assertions that the EOUSA or USAO/SDNY maintains "secret files," that a forged third superseding indictment exists, that the third superseding indictment obtained by the EOUSA from the Clerk of the United States District Court for the District of Columbia is forged, or that the prosecuting attorneys "stole" the "real" superseding indictment and replaced it with a "forged" indictment. His assertions of wrongdoing are speculative and he fails to demonstrate the existence of any evidence to rebut the presumption of good faith accorded to the EOUSA's supporting declarations. *See SafeCard Servs.*, 926 F.2d at 1200.

its interpretation of his request as one under the Privacy Act is improper. Compl. at 12 (emphasis in original). He is mistaken.

The Privacy Act "regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies . . . [and] authorizes civil suits by individuals . . . whose Privacy Act rights are infringed." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted). For example, the Act provides a means by which an individual may "gain access to his record or to any information pertaining to him which is contained in [an agency's system of records]," 5 U.S.C. § 552a(d)(1), and "request amendment of a record pertaining to him," 5 U.S.C. § 552a(d)(2). It does not, however, offer a remedy for constitutional claims arising from alleged wrongs covered by the Privacy Act. *See Wilson*, 535 F.3d at 704-10; *Hurt v. District of Columbia Court Servs. and Offender Supervision Agency*, 612 F. Supp. 2d 54, 56-57 (D.D.C. 2009) (dismissing constitutional claims based on agency's alleged violation of the Privacy Act), *aff'd in relevant part sub nom. Hurt v. Cromer*, No. 09-5224, 2010 WL 604863 (D.C. Cir. Jan. 21, 2010) (per curiam); *see also Lynn v. Lappin*, 593 F. Supp. 2d 104, 106 (D.D.C. 2009).

Plaintiff fails to establish that either 28 U.S.C. § 534 or the case law on which he relies actually applies to the circumstances of this case or cuts against the EOUSA. For example, in *Menard v. Saxbe*, 498 F.2d 1017 (D.C. Cir. 1974), the appellant had been detained by local police and a record of his arrest and a fingerprint card were forwarded to the FBI, even though no criminal complaint was ever filed and no evidence linking him to any crime had been presented. *See* 498 F.2d at 1019. The FBI retained the arrest record and the appellant sought its expungement from FBI records. *See id.* at 1020. Pursuant to 28 U.S.C. § 534, the FBI collected

and maintained identification records, including fingerprint records, *id.* at 1021, and kept them "even where the record indicate[d] that the arrestee was released without being charged," *id.* at 1022.[10] While recognizing that the FBI "had no authority to retain this record in its criminal files along with the mass of arrest records" once notified that the appellant's "encounter with the Los Angeles police authorities was purely fortuitous," *id.* at 1027, the court found "the role played by the FBI's Identification Division . . . derivative," *id.* at 1025, such that an expungement claim properly should be brought against the local law enforcement agency involved, *id.* The other cases on which plaintiff relies also address the FBI's maintenance of criminal records pursuant to section 534. *See Tarlton v. Saxbe*, 507 F.2d 1116 (D.C. Cir. 1974); *McKnight v. Webster*, 499 F. Supp. 420 (E.D. Pa. 1980). Plaintiff's request for expungement of a record maintained by the EOUSA in connection with a particular criminal case and addressed to the agency's Freedom of Information and Privacy Staff reasonably is construed as a Privacy Act request.

The EOUSA demonstrates that the responsive records were maintained in its criminal files, and these files are exempt from the amendment provision of the Privacy Act.[11] *See* 28 C.F.R. § 16.81(a)(4) (exempting Criminal Case Files (JUSTICE/USA-007) from subsection (d)

---

[10] Under 28 U.S.C. § 534, the Attorney General shall "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records." 28 U.S.C. § 534(a)(1).

[11] The EOUSA argued that records maintained in the EOUSA's criminal files are exempt from the Privacy Act's amendment provisions, *see* Def.'s Mem. at 12, but plaintiff does not address this argument in his opposition. The Court treats the matter as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted); *see Fox v. Am. Airlines, Inc*., 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (affirming district court's dismissal of a complaint where the plaintiff failed to comply with Local Civil Rule 7(b)).

of the Privacy Act); 28 C.F.R. § 16.81(b)(3) (explaining that "access to the records contained in [this system] would inform the subject of [a] criminal investigation and/or civil investigation, matter or case of the existence of that investigation, provide the subject of the investigation with information that might enable him to avoid detection, apprehension or legal obligations, and present a serious impediment to law enforcement and other civil remedies"); *see Ramirez v. U.S. Dep't of Justice*, 594 F. Supp. 2d 58, 66 (D.D.C. 2009) (concluding that records maintained by the EOUSA in criminal files are exempt from the accuracy and damages provisions of the Privacy Act under 28 C.F.R. § 16.81(a)(4), (b)), *aff'd*, No. 10-5016, 2010 WL 4340408 (D.C. Cir. Oct. 19, 2010) (per curiam). Even if there were a forged third superseding indictment in the USAO/SDNY's files, plaintiff could not obtain the relief he seeks under the Privacy Act.

## III. CONCLUSION

The EOUSA demonstrates its full compliance with its obligations under the FOIA and the Privacy Act, and its motion for summary judgment therefore will be granted. An Order is issued separately.

/s/
JOHN D. BATES
United States District Judge

DATE: February 16, 2011